**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**PARKERSBURG DIVISION**

ERIE INSURANCE PROPERTY & CASUALTY
COMPANY,

                Petitioner,

v.                                       CIVIL ACTION NO.  6:09-cv-01532

HALFORD T. JOHNSON, et al.,

                Respondents.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the petitioner's Motion to Dismiss Certain Counts of the Amended Counterclaim [Docket 66], which the court has construed as a Motion for Summary Judgment, pursuant to Rule 12(d) of the Federal Rules of Civil Procedure.  For the reasons set forth below, the petitioner's Motion is **GRANTED in part** and **DENIED in part**.

**I.**       **Background**

The relevant facts are set forth in this court's Order dated June 16, 2011, partially granting Erie's pending Motion. [Docket 82].  Accordingly, the court need only provide a brief summary here.

This insurance coverage dispute arises out of a two-car accident on January 8, 2009, in Wood County, West Virginia, between Karen Johnson and Andrew and Rejena Buckley.  Karen Johnson was driving a 2000 Chevrolet Blazer (the "Blazer") registered in the name of Dual Air Refrigeration, a business run by her husband, Halford T. ("Troy") Johnson.  At the time of the accident, Troy

Johnson held at least three insurance policies with Erie Insurance Property & Casualty Company ("Erie"). These policies included a Family Auto Insurance Policy issued to Troy and Karen Johnson (the "Personal Policy"), a Commercial Auto Insurance Policy issued to Halford T. Johnson d/b/a Dual Air Refrigeration (the "Commercial Policy"), and a Fivestar Contractor's Policy issued to Halford T. Johnson d/b/a Dual Air Refrigeration (the "CGL Policy").

On August 12, 2009, the Buckleys filed suit against the Johnsons in the Circuit Court of Wood County. This suit resulted in a jury verdict in favor of the Buckleys and an award of $1.68 million in damages.[1] On December 22, 2009, while the underlying state action was still pending, Erie filed the instant federal declaratory judgment action, naming each of the Johnsons and the Buckleys as respondents. Erie initially sought a declaration that the "claims alleged in the Complaint in the Underlying Lawsuit against Karen Johnson are not covered under the [Commercial] Policy." (Erie's Pet. Decl. J. [Docket 1], at 5.) The Buckleys have since alleged eight Amended Counterclaims against Erie and one Cross-claim against the Johnsons. [Docket 54].

The Counterclaims against Erie consist of both coverage claims and claims for bad faith, statutory violations, and other extra-contractual claims. Specifically, the coverage claims consist of the following: (1) Counts One and Two seek a declaratory judgment regarding the availability and extent of coverage under the Commercial Policy; (2) Count Three sought a declaratory judgment regarding coverage under the CGL Policy; and (3) Count Five seeks a declaratory judgment that the

---

[1] The judgement was apportioned as follows: (1) $1,486,978.89 to Andrew Buckley for medical expenses, pain and suffering, past and future, loss of ability to enjoy life, loss of consortium with family, emotional distress and mental anguish, and the present value of reasonable value of household services; (2) $153,181 to Rejena Buckley for medical expenses, pain and suffering, past and future, and emotional distress and mental anguish; and (3) $20,000 to each V.D.B. and J.M.B. (the Buckleys' minor children) for loss of consortium with family and sorrow and mental anguish.

Buckleys are entitled to Medical Payments under the Commercial and Contractor's Policies. The extra-contractual claims include the following: (1) Count Four asserts a claim for "reasonable expectations"; (2) Count Six asserts that Erie violated the West Virginia Unfair Trade Practices Act (the "UTPA"); (3) Count Seven asserts a common law bad faith claim; and (4) Count Eight asserts a claim for abuse of process.

Erie moved to dismiss these Counterclaims on January 3, 2011, and after considering the Motion, the court notified the parties that it was treating Erie's Motion as one for summary judgment, pursuant to Rule 12(d) of the Federal Rules of Civil Procedure. On June 16, 2011, the court granted summary judgment to Erie as to Count Three of the Counterclaims, ruling that the CGL Policy did not provide coverage for the Buckleys' claims. The court then heard arguments and requested supplemental briefing on the remaining Counts. Based on the evidence and arguments, it appears that at this stage in the litigation a majority of the primary coverage issues, i.e., the extent of the coverage available under the personal, commercial, and CGL Policies, has been largely resolved, however Erie has not tendered full payment under the Commercial Policy and disputes the availability of coverage under a "first aid" provision[2] of the Commercial Policy. In addition, all of the extra-contractual Counterclaims remain pending. I will first address these remaining coverage issues before turning to the Buckleys' extra-contractual claims.

## II.    Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

_____

[2]  Although the Buckleys refer to this as a "medical payments clause," I will refer to this as a "first aid clause" to avoid confusion because the term "medical payments clause" is often used as a term of art in insurance coverage disputes.

P. 56(c).  In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor."  *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion.  *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

## III.    Analysis

### A.    Counterclaim Counts One and Two - Coverage under the Commercial Policy

Counts One and Two request a determination of the availability and extent of coverage under the Commercial Policy.[3]  Count One simply requests a determination that the Commercial Policy

---

[3] Counts One and Two also request "that the Respondents be awarded their reasonable attorneys' fees and costs incurred in responding to this Petition." (Id., at 14, 17.)  The Buckleys have not provided any legal support for the proposition that they are entitled to attorney's fees.  Moreover, the Buckleys have not moved for summary judgment.  This court declines what appears to be an
(continued...)

-4-

provides coverage, while Count Two requests a determination that coverage under the Commercial Policy is subject to four individual per person limits of $500,000 for *each* of the Buckleys rather than one  per person limit for Andrew Buckley.[4]  (Am. Answer Countercl. Erie's Pet. Decl. J. [Docket 60], at 13-17.)  The parties agree that "much of the controversy presented in Count II has been resolved by Erie's payments of the verdicts to Rejena Buckley, V.D.B. and J.M.B," (Mem. Opp. Converted Mot. Summ. J. [Docket 78], at 5.) Erie claims that it is "prepared to tender" the coverage to Andrew Buckley up to the policy limit of $500,000, however counsel for Erie represented that, as of the June 21, 2011 hearing, it had not yet made any payments in light of its pending appeal.  Erie asserts that these Counts are moot because Erie has extended coverage under the Commercial Policy.

Erie cannot "moot" a declaratory judgment claim seeking coverage under the Commercial Policy simply by paying claims for three of the Buckleys' four judgments.  Erie has represented to this court on multiple occasions that it is prepared to tender  the full amount of coverage available to Andrew Buckley under the Commercial Policy, indicating that Erie has both conceded coverage under the Commercial Policy and abandoned its "derivative claims" theory limiting the Buckleys' aggregate coverage under the Commercial Policy to $500,000.  Nevertheless, Erie has not actually provided coverage for any portion of Andrew Buckley's judgment.  Erie has also failed to offer any

---

[3](...continued)
invitation to *sua sponte* award attorneys' fees to a non-moving party at summary judgment without being presented evidence or legal argument in support of such an award.

[4] Erie asserted that all of the Buckleys' claims were subject to one $500,000 per person limit under the Commercial Policy because all four family members' claims were derived from Andrew Buckley's injuries.  (Erie's Resp. Opp. Respondents' Mot. Leave Amend Answer & Countercl. [Docket 57], at 3.)  According to Erie's theory, "its policies appropriately limit recovery for derivative claims to the per person limit available to the person from whom the injuries derive." (Id.)

evidence, by way of affidavit or otherwise, that it plans to make such payments and abandon its derivative claims theory. Erie cannot "moot" a Counterclaim merely by making partial payment or announcing plans of making such payments in the future. Accordingly, based on Erie's representations to this court, I hereby **FIND** that, at the very least, there are genuine issues of material fact as to coverage under the Commercial Policy; Erie's Motion for Summary Judgment is **DENIED** with respect to Counts One and Two of the Buckleys' Amended Counterclaims.

### B.    Counterclaim Count Four - Reasonable Expectations

In Count Four, the Buckleys assert that they are entitled to coverage under the Commercial Policy under a "reasonable expectation of coverage" theory. The relief sought in Count Four, a declaration that the Commercial Policy provides coverage, is an alternative to the coverage sought in Count One. Courts in West Virginia recognize the doctrine of reasonable expectations, which "may apply in situations where an insurer attempts to deny coverage based on an exclusion that was not communicated to the insured, or where there is a misconception about the insurance purchased." *Am. Equity Ins. Co. v. Lignetics, Inc.*, 284 F. Supp. 2d 399, 404 (N.D. W. Va.) (quoting *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 356 S.E.2d 488, 495 (W. Va. 1987)). The Buckleys did not purchase the insurance policies from Erie, nor were they aware of any Erie insurance policies until after the accident. Simply put, the Buckleys had no knowledge of the Johnsons' insurance until after the accident, and thus had no expectations of coverage, reasonable or not, on which to base a reasonable expectation of coverage claim. *See Essex Ins. Co. v. Neely*, No. 5:45-cv-139, 2008 WL 619194, at *4 (N.D. W. Va. March 4, 2008). Accordingly, the court **FINDS** that the Buckleys cannot maintain a reasonable expectations claim against Erie; Erie's Motion for Summary Judgment is **GRANTED** as to Count Four of the Buckleys' Amended Counterclaims.

## C.      Counterclaim Count Five - Medical Payments Coverage

In Count Five, the Buckleys seek a declaration that they are entitled to coverage under the "medical payments" language of the Commercial Policy.[5]  Erie contends that the Buckleys are not entitled to coverage under this portion of the Commercial Policy, and, alternatively, that if the Buckleys are entitled to coverage, it is limited to "first aid" costs incurred by Andrew Buckley at the scene of the accident.   The relevant language is included in the "Additional Payments" section of the Commercial Policy and provides that Erie "will make the following payments in addition to the limit of protection."   (Am. Answer Countercl. Ex. 1[Docket 60-1], at 6.)  Included in this list of additional payments are "reasonable costs for *first aid* to other people and animals at the time of an accident involving an auto we insure."  (Id.)

The court begins its analysis of an insurance coverage dispute by giving the terms of the insurance policy their plain, ordinary meaning.  *See Mylan Labs. Inc. v. Am. Motorists Ins. Co.*, 700 S.E.2d 518, 524 (W. Va. 2010).  When those terms are "clear and unambiguous, they are not subject to judicial construction or interpretation." *Id.* (internal quotation marks omitted).  Where, however, the language of an insurance policy provision "is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as its meaning, it is ambiguous." *Id.* (internal quotation marks omitted).   Whether an insurance contract is ambiguous is a question of law for the court to decide.  *Id.*

---

[5] The Buckleys initially asserted that they were entitled to coverage under medical payments language in both the Commercial and the CGL Policies.  (Counterclaim [Docket 60], ¶¶ 102-11.) At the hearing, after this court denied the Buckleys' claim for coverage under the CGL Policy, counsel for the Buckleys represented that the Buckleys had since narrowed Count Five to only assert a claim for coverage under the "medical payments" language of the Commercial Policy.

Parsing out this first aid provision, the term "other people" refers to persons other than the named insured, including the Buckleys, and the parties have previously represented that the Blazer was "an auto we insure." The remaining issue is what constitutes "reasonable costs for first aid . . . at the time of an accident." Erie asserts that "first aid" is limited to "emergency aid or treatment given to someone injured, suddenly ill, etc., before regular Medical services arrive or can be reached." (Supplemental Mem. Supp. Mot. Summ. J. [Docket 88], at 3.) The Buckleys contend that they are entitled to coverage for all of Andrew Buckley's medical expenses, including multiple ambulance rides, that were incurred between before Andrew Buckley was admitted to the Ohio State University Medical Center on January 10, 2009.[6] (Id.)

Here, the first aid provision unambiguously provides coverage for reasonable costs incurred for first aid treatment at the time of the accident. Each of the parties have cited to a dictionary definition of the term "first aid," and both these definitions reiterate that first aid encompasses *emergency* medical care that is administered before a person is admitted to the hospital or receives regular medical treatment. This common definition is consistent with the approach taken by other courts interpreting similar "good Samaritan" clauses,[7] which are designed to reimburse costs incurred

---

[6] According to the Buckleys, Andrew Buckley was initially taken from the scene of the accident to the emergency room at Camden Clark Memorial Hospital, where he was given "only a preliminary diagnostic review." Mr. Buckley was sent home that day, and alleges that this brief visit did not constitute "regular medical care." The following day, Mr. Buckley was contacted by Camden Clark regarding his x-rays and then transported back to Camden Clark in an ambulance. Because Camden Clark determined that "it did not have a physician on staff" to treat Mr. Buckley's injuries, Mr. Buckley was ultimately transported by ambulance to the Ohio State University Medical Center, where Mr. Buckley was ultimately treated. The Buckleys assert that Mr. Buckley was not "hospitalized" and did not receive "regular medical treatment" until he was admitted to Ohio State and, accordingly, they seek reimbursement for costs incurred *before* Mr. Buckley was admitted.

[7] Both the first aid clause at issue in *DeMent* and the language cited by the Buckleys in
(continued...)

-8-

in providing emergency medical treatment to a "party who does not qualify as an insured under the policy contract."  *See, e.g., DeMent v. Nationwide Mut. Ins. Co.*, 544 S.E.2d 797, 801 (N.C. 2001) (internal quotation marks omitted); *see also* 44 Am. Jur. 2d Insurance § 1388 (2011) (noting that first aid clauses provide coverage for "immediate and imperative" services, rendered "within a reasonable time after the accident, under the facts and circumstances of a particular case.")

Moreover, "[i]n construing the provisions of a contract in an effort to ascertain the true intent, meaning, and purport thereof, courts will and must always examine the contract in its entirety, or such parts thereof as may disclose or tend to disclose object and purpose sought to be attained by the parties thereto." *Taylor v. Buffalo Collieries Co.*, 79 S.E. 27 (W. Va. 1913).  Here, the phrase "first aid" must be read in conjunction with the language temporally limiting coverage to costs incurred *at the time of the accident*.  After considering the entirety of the first aid clause, the court **FINDS** that the first aid clause covers the costs, if any, incurred in providing immediate emergency medical care, rendered at the scene of the accident before trained medical personnel arrived and assumed control of Mr. Buckley's care.  The Buckleys have failed to offer any evidence that Mr. Buckley received "first aid" at the scene of the accident before the arrival of trained medical personnel or incurred any other first aid costs that would entitle them to payment under the first aid provision.  Accordingly, the court **FINDS** that the Buckleys are not entitled to coverage under the first aid provision of the

---

[7](...continued)
*Gilbert v. American Casualty Co.*, 27 S.E.2d 431, 432 (W. Va. 1943), are distinguishable from the first aid clause at issue here.  Erie's policy language, unlike the others, does not make mention of making such payments "on behalf of an insured" or for expenses "incurred by the insured."  This distinction is significant in that Erie's policy language does not condition the right to first aid coverage on any action or expense taken by the insured.

Commercial Policy; Erie's Motion for Summary Judgment is **GRANTED** as to Count Five of the Buckleys' Amended Counterclaims.

### D.  Counterclaim Count Six - Unfair Trade Practices Act Claims

In Count Six, the Buckleys allege that Erie violated various provisions of the West Virginia Unfair Trade Practices Act (the "UTPA") andseek statutory damages.  Erie contends that the Buckleys are barred from bringing a claim under the UTPA because the Buckleys, as non-parties to the underlying insurance contract, are third-party claimants and, as such, are explicitly prohibited from bringing a UTPA claim against Erie.  The Buckleys, however, contend that, because they are entitled to recover directly from Erie under the first aid provision, they are first-party, rather than third-party claimants, and are, accordingly, permitted to bring a UTPA claims against Erie.

The UTPA provides that "[a] third-party claimant may not bring a private cause of action or any other action against any person for an unfair claims settlement practice."  W. Va. Code. § 33-11-4a(a)(2005).   West Virginia Code § 33-11-4a(j)(1) defines a "third-party claimant" as "any individual, corporation, association, partnership or any other legal entity asserting a claim against any individual, corporation, association, partnership or other legal entity insured under an insurance policy or insurance contract for the claim in question."  § 33-11-4a(j)(1)(2005).  The West Virginia Code of State Rules governing UTPA claims defines a "first-party beneficiary" as "an individual, corporation, association, partnership or other legal entity asserting a right to payment under an insurance policy or insurance contract arising out of the occurrence of the contingency or loss covered by such policy or contract."  W. Va. Code. R. § 114-4-2 (2006).

-10-

As discussed above, the Buckleys have not offered any evidence that they incurred "first aid" costs or otherwise in support of their claim for first aid benefits. Although the Buckleys asserted a right to payment directly under the first aid clause of the Commercial Policy, they have failed to establish that they incurred any losses covered by the first aid provision. Because the Buckleys have not incurred any losses recoverable under the first aid provision, they do not fall within the statutory definition of a first-party claimant. Accordingly, court **FINDS** that the Buckleys cannot maintain their UTPA claim because they are not first-party claimants; Erie's Motion for Summary Judgment is **GRANTED** as to Count Six of the Buckleys' Amended Counterclaims.

### E.     Counterclaim Count Seven - Common Law Bad Faith Claims

In Count Seven, the Buckleys assert a common law bad faith claim and seek damages based on Erie's alleged breach of the implied duty of good faith and fair dealing. Erie asserts that the Buckleys cannot maintain a common law bad faith claim because they were not party to the underlying insurance contracts, and, under West Virginia law, third parties may not bring common law bad faith actions against an insurer. The Buckleys reiterate their argument that because they are first-party rather than third-party claimants under the first aid provision of the Commercial Policy, they are permitted to bring a common law bad faith claim directly against Erie.

Under West Virginia law, "[a] third party has no cause of action against an insurance carrier for common law breach of the implied covenants of good faith and fair dealing or for common law breach of fiduciary duty." *Elmore v. State Farm Mut. Auto Ins. Co.*, 504 S.E.2d 893 (W. Va. 1998). "In *Elmore*, the West Virginia Supreme Court of Appeals held that the common law duty of good faith and fair dealing, recognized in *Hayseeds, Inc. v. State Farm Fire & Cas.*, 352 S.E.2d 73, 80 (W.

-11-

Va. 1986), runs between insurers and insureds and is based on the existence of a contractual relationship." *S. West Virginia Paving Inc., v. Elmo Greer & Sons, LLC*, 691 F. Supp. 2d 677, 679 (S.D. W. Va. 2009). "No such contractual relationship exists between an insurer and a third party claimant." *Gallagher v. Allstate Ins Co.,* 74 F. Supp. 2d 652, 655 (N.D. W. Va. 1999). "In fact, the relationship between an insurer and third party claimant is inherently adversarial." *Id.*

The relevant inquiry for a common law bad faith claim is thus solely into the underlying contractual relationship between the parties. In the present case, there was no contractual relationship between Erie and the Buckleys. Even if the Buckleys could recover directly from Erie under the first aid provision, this would not create the requisite *contractual* relationship between Erie and the Buckleys. Accordingly, the Buckleys cannot maintain a common law bad faith action against Erie; Erie's Motion for Summary Judgment is **GRANTED** as to Count Seven of the Buckleys' Amended Counterclaims.

### F.    Counterclaim Count Eight - Abuse of Process

In Count Eight, the Buckleys raise an abuse of process claim. The Buckleys allege that Erie committed an abuse of process by improperly filing and proceeding with the instant action even though Erie had already determined that coverage existed under the Commercial Policy. Erie, in response, asserts that it filed the instant action for a proper purpose, to resolve the coverage dispute. Erie further asserts that the Buckleys cannot base their abuse of process claim on either the filing of the instant declaratory judgment action or actions taken in other cases.

In *Preiser v. MacQueen*, 352 S.E.2d 22 (1985), the West Virginia Supreme Court held that "[g]enerally, abuse of process consists of the willful or malicious misuse or misapplication of

lawfully issued process to accomplish some purpose not intended or warranted by that process." *Id.*
at 28 (internal quotation marks omitted).  "To properly state a claim for an abuse of process, there
must be first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the
regular conduct of the proceeding." *Rudd Equip.Co., Inc. v. Terry Raines Contracting, Inc.*, No
3:09-cv-1551, 2010 WL 3835643, at *6-7 (S.D. W. Va. Sept. 29, 2010) (quoting W. Prosser,
Handbook of the Law of Torts § 121 (1971)).  "Some definite act or threat not authorized by the
process, or aimed at an objective not legitimate in the use of the process, is required; and there is no
liability where the defendant has done nothing more than carry out the process to its authorized
conclusion, even though with bad intentions." *Id.*  In *Preiser*, the court further explained that an
abuse of process "is not commencing an action or causing process to issue without justification, but
misusing, or misapplying process justified in itself for an end other than that which it was designed
to accomplish." *Id.* at n. 8.  This court recently considered *Preiser* and its progeny and dismissed
an  abuse of process claim where a party alleged only that a party misused the process by filing a
Complaint, not that a party abused the process after the Complaint was filed.  *Rudd Equip. Co.*, at
*6-7 (S.D. W. Va. Sept. 29, 2010).

Under West Virginia law, the Buckleys cannot maintain an abuse of process cause of action
based on the filing of the instant suit, even if Erie filed suit for an "improper purpose," i.e., after
determining that coverage existed under the Commercial Policy.  Even if Erie subsequently
determined that coverage existed under the Commercial Policy, it is clear from the record that the
parties disputed the extent of the available coverage, indicating that Erie did not abuse the litigation
process by continuing with this declaratory judgment action.  Aside from a footnote mentioning that
Erie was "sanctioned by the federal court for abusing the discovery process," the Buckleys do not

-13-

make any specific allegations that Erie otherwise abused the litigation process in this case, or acted in any improper manner.  Finally, the Buckleys assertion that "Erie continued to use the pendency of the declaratory judgment action to gain a favorable bargaining position over both the Buckleys and the Johnsons" is of no relevance to my analysis here.  As discussed above, neither the filing nor the mere pendency of a case are sufficient to support a claim for abuse of process and the Buckleys have simply failed to provide any evidence that Erie actually committed an improper act in the course of this declaratory judgement action.  Accordingly, the court **FINDS** that there are no genuine issues of material fact with respect to the Buckleys' abuse of process claim; Erie's Motion for Summary Judgment is **GRANTED** as to Count Eight of the Buckleys' Amended Counterclaims.

## IV.    Conclusions

For the foregoing reasons, Erie's Motion to Dismiss Certain Counts of the Amended Counterclaim [Docket 66], which the court has construed as a Motion for Summary Judgment, is **GRANTED in part** and **DENIED in part**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:       August 15, 2011

Joseph R. Goodwin, Chief Judge